And we'll turn to Evan Geffner v. The Coca-Cola Company. Good morning, Your Honor. May it please the Court, I'm John Weston. I represent the plaintiffs. This is the Diet Coke case. The briefs, I suggest, are pretty good in covering the issues. I wanted to emphasize a couple of points this morning in the time that I've got. While the district courts have tended to break this down into two different issues, the plausibility of the meaning of Diet Coke and the persuasiveness of the scientific studies that we offer to prove that Diet Coke not only will not help you lose weight, but will increase the risk that you will gain weight, as well as that you will acquire hyperglycemia, whether those studies are persuasive enough to survive a Rule 12b motion. And I suggest that what has happened in this case is that the Iqbal decision and Twombly before it, which Judge Cabranes is a proximate cause of, have resulted in the district court in this case essentially entering summary judgment on a Rule 12 motion. The court is engaged in a weighing of facts. I will give three examples. The complaint suggests that Diet Coke implies certain things. The Coca-Cola company says we have other definitions that suggest to the contrary. The district court picked the ones that it liked and said this is what reasonable consumers believe. Even though we have submitted a study of over 600 people who say that they expect that Diet Coke at least will not make them gain weight. Seventy-seven percent of them say that. Fifteen percent of them say that they expect it to help them lose weight. Now some of those people are going to be reasonable people. In terms of the scientific evidence, because time flies, the district court did the same thing. It suggested that in all of these studies, all of which contain, as good scientific studies do, a caution that they are not necessarily the final word, but all of them find an association between consumption of this ingredient. In the defendant's brief, they go through pages 26 to 27. All of the studies, Brown, Borges, Azad, Mattis, and Nelton say there just hasn't . . . there isn't even an opinion now that aspartame causes weight gain. In quotes from those opinions of the experts, where is it plausible that weight gain is caused by artificial sweeteners? Because, Your Honor, if you read the studies, and we cite them in the complaint and in the briefs as well, there are a number of them. There's one of them, and I'm not going to look it up for you right now, that says we have adjusted for all of the other things, and this association is plain. This isn't the stage that you do that at. You get experts to say what scientists consider to be persuasive. You have this Bradford Hall or Bradford Hill nine-step analysis that you do with epidemiological studies. None of that was done here. What the district court did here was to say, these studies don't say Coke definitely causes this, and therefore I'm going to ignore them. And that's not proper. Under this court's opinion in Anderson News, and more important, under the Supreme Court's opinion in the Matrix decision, the brief cite to both, Coke has addressed neither one of those opinions. In the Matrix decision, which was a securities case where the question was whether investors would consider it important to know that taking a cold remedy might cause you to lose your sense of smell. The science was contested, just as it is in this case. The defendant said the studies don't say that. The plaintiff said the studies do say that. The U.S. Supreme Court . . . This is a 12B6. Yes, sir. But if you in your complaint plead these studies, why isn't it fair for the defendant to say that's not what the studies say? It is fair for the defendant to say this. In fact, the defendant should say that. On Rule 12 motion, you believe the plaintiff, and then you move on to discovery. You move on to your Doebert motions. You move on to summary judgment and potentially to trial. You don't try the case on a Rule 12 motion. And the language of Iqbal, the language of Twombly, the language of all of these cases makes that quite plain, that it's improper to weigh evidence and to decide facts at this stage. That hasn't changed with Iqbal. For example, page 46 of the complaint, you quote from the Azad study, right? But then in the brief, they quote another section that says there was limited evidence for the effect of non-nutritive sweeteners on BMI. Why isn't that fair game? I mean, if you refer specifically to a study and quote from it, can't they say, well, but that's not what the study says? Of course they can. And at some point, the court or the jury is going to determine the persuasiveness of that, whether the study, because the study does say what we've cited it for as well. You just don't do that at this stage of the case. You do that later on. There's a procedure for this. It's been developed over centuries. With 41 seconds left, I'm just going to repeat that you don't decide facts on summary judgment. That's what the district court here did, and we ask this court to reverse it. May it please the court. Jane Metcalfe from Patterson Belknap for the Coca-Cola Company. The district court here should be affirmed because this court has already considered this same set of allegations twice in plaintiff's counsel's parallel cases against Pepsi and Dr. Pepper and found them insufficient because they failed to plausibly allege a causal relationship between diet soft drinks and the risk of weight gain or of weight gain. But those were non-precedential summary orders, right? That's correct, Your Honor. They did, however, dispose of exactly the same pleading, except for the fact that they were against diet Pepsi and diet Dr. Pepper. So two different panels of this court, as well as five district judges, has looked at these allegations regarding the scientific studies. These precise ones said these are not sufficient. They do not support even a plausible inference of a causal relationship between diet soft drinks and weight gain. And so the plaintiffs just have not plausibly alleged their claim. There's no reason for a different result here. This is exactly the same set of scientific studies. These complaints are three of a kind, were all filed the same day in the Southern District of New York. Judge Engelmeyer dismissed for this reason, this court affirmed by summary order, and denied rehearing. Judge Daniels dismissed for this reason, and the court again affirmed by summary order. So if these allegations were insufficient when they were brought against Pepsi, and insufficient when they were brought against Dr. Pepper, there's absolutely no reason that there should be a different result here with respect to diet Coke. What about the argument I just had, the questions I just had of opposing counsel about, well, this sure looks like a summary judgment kind of case where you evaluate the expert, at least summary judgment, maybe trial, where you evaluate these expert opinions. The only thing that the district courts, the five district courts, and the two prior panels of this court have evaluated is the sufficiency of the allegations to support plaintiff's contention that there is a causal relationship between diet Coke and weight gain. That's the gatekeeping function that the district court performs whether or not a complaint relies upon scientific evidence. And here, the plaintiff's contention was there is a causal relationship between diet soft drinks and weight gain. And the allegations were referencing all of these studies. When the district courts looked at those studies, took every word of them at face value, many of them said, please do not quote us for the proposition that diet soft drinks cause weight gain. We are not establishing that. None of them actually endorsed a causal connection of any kind between diet soft drinks and weight gain. At best, they said, we have absolutely no idea whether there is any such link. So this is not a situation in which the district court looked at studies, weighed their credibility, said, I don't like the methodology of this, so I'm going to lay it aside and not credit its conclusions. That's not what happened. The district court took every word of these studies at face value, and on their face, they said, we are not saying and we are not even endorsing as an unproven theory that diet soft drinks cause weight gain. And yet, those were plaintiff's allegations in support of their contention that diet soft drinks cause weight gain. If that's not a situation in which the allegations fail to support the plaintiff's conclusory statement, it's very hard to imagine what is. Is Diet Coke lower in calories than regular Coca-Cola? Yes, Diet Coke has zero calories. Does it lead to less weight gain than regular Coca-Cola? Do we know that, or do these studies tell us that? We do not know that. The plaintiffs have not alleged that any comparative effect of Diet Coke versus regular Coke on weight gain. What plaintiffs are claiming is that Diet Coke has a causal relationship with weight gain. There are a number of allegations to that effect in their complaint, and that is their- It's like having no calories. It causes that. That's their contention. Normally, it would be the caloric content of something that was a function of the weight gain, but their argument is that despite the fact that it has no calories, it can enhance weight gain, right? That is their conclusory statement, but none of the allegations or the studies supported- the studies incorporated by reference has endorsed that even as an unproven theory, or even with a cautionary note, we think diet soft drinks cause weight gain, but we're not sure because that's not what they say. They say, we don't know. We're not saying that. And that's your argument, not that if they had had such an expert conclusion and the district court had not had a Daubert problem, that that wouldn't raise an issue. You're saying that what they've come forward with doesn't say the conclusion that they're urging. Am I right? Exactly, Your Honor. There are also two alternative grounds to affirm that are discussed in our brief, but the court need not reach them. The court in the Pepsi cases and in the Dr. Pepper cases have disposed of plaintiff's complaint on this ground, and it is a grounds for disposing of the complaint at issue here. This ground being? That the plaintiffs have not plausibly alleged any scientific studies or any facts of any kind supporting a plausible inference of a causal relationship. What is the preemption issue here, if at all? The plaintiff's claim is, in addition to being insufficiently pled, also preempted by the Food, Drug, and Cosmetic Act because there is a specific provision in Section 343R, which has preemptive effect, that governs the use of the term diet in soft drink brand names and with which Diet Coke complies. And there are also FDA regulations setting forth FDA's determination that diet is appropriately used on low-calorie and reduced-calorie soft drinks. Those have preemptive effect. The Nutrition Labeling and Education Act forecloses any state law that is not identical to those preemptive FDCA requirements. What did Judge Stanton say about that? So Judge Stanton did not go with us on this preemption point. He was of the view that because Section 343R does not impose a requirement that soft drinks be labeled diet, that somehow it was proper for plaintiffs to assert through state law a contrary set of requirements for the labeling of diet soft drinks. But Section 343R2D, which governs here, says if you want to use the term diet as a nutrient content claim, you may do so if the product was on the market before October 25, 1989, complied with the definition of diet as of that time, which was and actually continues to be lower-calorie soft drink, or lower-reduced calorie, rather, and you have already had this term diet in your brand name. In those instances, the sort of default prohibition on nutrient content claims in Section 343R doesn't apply, and so it laid out these criteria under which the use of the term diet is permissible. Now, plaintiffs have come in with a new set of criteria. They want it to satisfy their own definition of diet. That is exactly what the FDCA's express preemption clause prohibits. But you didn't file a cross appeal on this. What's the effect of that on us? We did not file a cross appeal because we're not asking for any relief from this court. We're asking for Judge Stanton's decision to be affirmed, and this court wouldn't have had jurisdiction to hear a cross appeal from us. It's an alternative grounds for affirmance. On the theory that we could affirm Judge Stanton's judgment on any basis provided by the record. That's correct, and certainly this argument was presented in the district court and is presented to this court, but I see I'm almost out of time, so I'll just wrap up by concluding that this court need not reach the preemption issue. It can dispose of this, can and should dispose of this complaint on the exact same grounds that it has disposed of two identical complaints against diet Pepsi and diet Dr. Pepper. So we ask the court to follow those decisions here. Thank you very much. Thank you. Mr. Whiston. Thank you, Your Honor. Let's work in reverse. No defendant in these cases has ever cross appealed the preemption issue. Second circuit ruling, second circuit law says if you don't cross appeal, you can't raise it unless you've got exceptional circumstances. There aren't any here. We've discussed it in the briefs. Koch isn't even pushing it today. Preemption has been uniformly treated as not applicable in these cases. I promised the court that I would not read from a study, but I'm going to anyway. Paragraph 51 of the complaint on Alpha 2.5 of the record, a 28-year follow-up study adjusted for virtually all contrary factors says, we consistently found low-calorie sweetener use associated with weight gain and expanding waistline. I'm sorry, what? Yes. Paragraph 51 of the complaint appears A2.5 on the reproduced record. And it reads, is this a pleading or is this a? This is the complaint. This is paragraph 51 of the complaint, which cites verbatim one of the studies that we've relied on. But what about this part you just quoted? Is that in paragraph 51? It is. I missed it then. Paragraph 51, that would be the second and third lines. We consistently found low-calorie sweetener use associated with weight gain and expanding waistline. Let's talk about all of the other cases briefly because there have been five district court cases and two cases from this court, all of which have reached the opposite conclusion. I was sort of expecting one of you to say, why are you even here, young man? And the answer to that. In paragraph 51, the statement is that it's associated with weight gain and expanding waistline, right? That is correct, Your Honor. But that associated with doesn't tell us anything about causation. It tells you that it is an apparent. I only say that because your other allegation is at paragraph . . . No, your other expert's report is that it may contribute to weight gain, has been associated. All of this does not speak in the language of causation. And that's the problem, is whether you've pleaded anything that is more than this kind of soft statements. Anything that would plead causation. Well, Your Honor, I would refer the court to the Supreme Court's matrix decision, which included fish studies and where causation was . . . we at least have rats. Well, I mean, why I'm asking this is, when you say it's associated with weight gain, is that because someone who drinks a Diet Coke thinks that therefore they can eat three bags of potato chips? You know, I mean, this is what we don't know. That's exactly right. This is . . . that is exactly right, Your Honor, and it is my whole point here. This is something that is supposed to be developed . . . Three bags of potato chips that are causing the expanded waistline. There's actually an . . . I don't expect the court to read all of these studies. It would be improper to do so at this stage. But there is a phrase for that factor, for that . . . do you drink diet soda because you're fat? Or are you fat because you drink diet soda? And the scientists . . . and this particular . . . What is that phrase? I don't know, Your Honor. This particular study, the Kia study in paragraph 51 here, has adjusted for that factor and for many others. Okay? The time for deciding how persuasive that is comes later. It doesn't come now. The two summary opinions of this court, we can only assume were deliberately written as summary opinions, so that they would not be binding on other cases. The district court cases, I regret, are just following Judge Alsop over the cliff. He wrote the first one out in California in Coke, Diet Coke, and all of the four ones written after him have just copied his analysis. I ask this court to please stop that chain and find for me. Thank you, Mr. Wesson, very much. We appreciate the arguments of both sides. We'll reserve decision.